UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
TIMOTHY J. SULLIVAN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-4560
Fax (410) 962-3630

March 25, 2016

LETTER TO COUNSEL

RE:  *Ronald C. Kopp v. Commissioner of Social Security Administration*
     Civil No. TJS-15-0522

Dear Counsel:

On February 24, 2015, the Plaintiff, Ronald C. Kopp ("Mr. Kopp"), petitioned this Court to review the Social Security Administration's final decision to deny his Disability Insurance Benefits ("DIB"). (ECF No. 1.) The parties have filed cross-motions for summary judgment. (ECF Nos. 19 & 22.) These motions have been referred to the undersigned with the parties' consent pursuant to 28 U.S.C. § 636 and Local Rule 301.[1] (ECF Nos. 5 & 6.) Having considered the submissions of the parties (ECF Nos. 19, 22 & 23), I find that no hearing is necessary. *See* Loc. R. 105.6. This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Following its review, this Court may affirm, modify, or reverse the Commissioner, with or without a remand. *See* 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89 (1991). Under that standard, I will deny both motions and remand this case for further proceedings. This letter explains my rationale.

Mr. Kopp filed his application for DIB on August 11, 2011. (Tr. 164-69.) He claimed alleged disability beginning on June 1, 2011. (*Id.*) Mr. Kopp's claims were denied initially and on reconsideration. (Tr. 68-76, 90-93, 77-86, 98-100.) A hearing was held before an Administrative Law Judge ("ALJ") on November 19, 2013. (Tr. 25-64.) On December 26, 2013, the ALJ determined that Mr. Kopp was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 11-20.) On January 21, 2015, the Appeals Council denied Mr. Kopp's request for review of the ALJ's decision (Tr. 1-6), so the ALJ's December 26, 2013 decision constitutes the final, reviewable decision of the agency.

The ALJ evaluated Mr. Kopp's claim for benefits using the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520. At step one, the ALJ found that Mr. Kopp was not engaged in substantial gainful activity, and had not been engaged in substantial gainful activity since June 1, 2011. (Tr. 13.) At step two, the ALJ found that Mr. Kopp suffered from the severe impairments of degenerative cervical spine disease, limited vision (left eye), and depression. (*Id.*) At step three, the ALJ found that Mr. Kopp's impairments, separately and in combination, failed to meet or equal in severity any listed impairment as set forth in 20 C.F.R.,

---

[1] On March 11, 2015, this case was referred to the Honorable Stephanie A. Gallagher for all proceedings. (ECF No. 7.) On November 3, 2015, the case was reassigned to me.

Chapter III, Pt. 404, Subpart P, App. 1 ("Listings"). (Tr. 13-15.) The ALJ determined that Mr. Kopp has the residual functional capacity ("RFC") to

> perform light work as defined in 20 C.F.R. 404.1567(b) except occasional bilateral overhead reaching; occasional movement of the neck in any direction; no acuity in the left eye; no exposure to hazards such as unprotected heights and heavy machinery; work limited to simple, routine, repetitive tasks with occasional interaction with the public.

(Tr. 15.)

At step four, the ALJ determined that Mr. Kopp was unable to perform any past relevant work. (Tr. 18.) At step five, the ALJ considered Mr. Kopp's age, education, work experience, residual functional capacity, as well as the testimony of a vocational expert, and concluded that "there are jobs that exist in significant numbers in the national economy that [Mr. Kopp] can perform." (Tr. 19.) Therefore, the ALJ found that Mr. Kopp was not disabled under the Social Security Act. (Tr. 20.)

Mr. Kopp raises two arguments in this appeal. First, he argues that the ALJ's RFC assessment is not supported by substantial evidence. (ECF No. 19-1 at 4-5.) Second, he argues that the ALJ improperly found that jobs exist in the national economy that Mr. Kopp can perform. (*Id.* at 5-6.)

Mr. Kopp first argues that the ALJ improperly rejected evidence that showed Mr. Kopp to have a "severe mental health disability" and that as a result, the ALJ's RFC determination is not supported by substantial evidence. (ECF No. 19-1 at 4.) RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SSR 96–8p, 1996 WL 374184 (S.S.A. July 2, 1996). The ALJ must consider even those impairments that are not "severe" in formulating the RFC. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). In determining a claimant's RFC, the ALJ must evaluate the claimant's subjective symptoms using a two-part test. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. §§ 404.1529(a), 416.929(a). First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the alleged symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R. §§ 404.1529(c), 416.929(c). At this second stage, the ALJ must consider all available evidence, including medical history, objective medical evidence, opinion evidence, and statements by the claimant. *Id*. The ALJ must also assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. SSR 96–7p, 1996 WL 374186 (S.S.A. July 2, 1996).

A brief summary of the record as it relates to Mr. Kopp's mental health problems is warranted. Mr. Kopp has undergone mental health treatment since at least April 2007. (Tr. 391-421.) His doctors have prescribed him medication for a number of diagnoses, include bipolar disorder, anxiety, and depression. (Tr. 317, 321-35.) By his own report, he spends nearly all of his time lying in bed watching television in his basement apartment. (Tr. 354.) While he is able

to drive a car, cook his meals in a microwave, and do his own shopping, he can no longer enjoy any of the hobbies that he enjoyed before his serious injuries in three separate incidents, including a workplace accident. He sometimes visits with his mother, but otherwise has no significant social interactions. He feels anxious in crowds of people and even when he is alone, he consistently experiences racing thoughts and feelings of worthlessness. Mr. Kopp reports that he suffers from "serious panic attacks almost every day." (Tr. 424-25.)

Dr. Janet Anderson administered the Wechsler Adult Intelligence Scale (Fourth Edition) ("WAIS-IV") and other tests on Mr. Kopp in September 2013. (Tr. 422-31.) She found that Mr. Kopp has a "Full Scale IQ of 75, which placed his overall level of intellectual functioning in the Borderline range, falling at the lower 5th percentile of the population." (Tr. 425.) Dr. Anderson's assessment of Mr. Kopp's personality functioning is also relevant. (Tr. 427-28.) Dr. Anderson found that "it is in the personality area where Mr. Kopp has developed very serious difficulties. He is profoundly depressed. . . ." (*Id.*) After Mr. Kopp's wife divorced him, he was involved in three serious injuries: an automobile accident in December 2007, a work related accident in 2009 where pallets fell on him and pinned him against a wall, and a robbery in which his right clavicle and several ribs were broken. (*Id.*) His depression and related mental problems, coupled with the physical pain from these injuries, leave Mr. Kopp with energy sufficient only to manage his pain. (*Id.*) Since his injuries, Mr. Kopp has stopped socializing with his friends, although he occasionally sees his two adults sons and his elderly mother. (*Id.*) He has an "extremely low frustration tolerance" and "cannot cope with stress while, alternately, trying to cope with his chronic pain." (*Id.*) He participated in counseling and psychotherapy for a time, but can no longer afford the treatment. (*Id.*) Taking account of Mr. Kopp's test results and medical history, Dr. Anderson diagnosed him with Bipolar II disorder – Moderate, Attention Deficit/Hyperactivity Disorder, Depressive Disorder, related to deteriorated medical condition and chronic pain, and Dysthymia. (Tr. 428.) In addition, in a letter dated November 7, 2013, Dr. Anderson stated that although the DSM-5 "no longer has a multi-axial diagnosis," she would have given Mr. Kopp a GAF score of 50 or below if she had been using the DSM-IV.[2] (Tr. 430-

---

[2] The Global Assessment of Functioning ("GAF") scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. *Johnson v. Astrue,* No. TMD-10-947, 2011 WL 5149574 at *2 (D. Md. Oct. 27, 2011) (citing *Diagnostic and Statistical Manual of Mental Disorders,* Fourth Ed.). A GAF score is a "subjective determination that represents the clinician's judgment of the individual's overall level of functioning" at the time of the evaluation. *White v. Comm'r of Social Sec.,* 572 F.3d 272, 276 (6th Cir. 2009); *see also Green v. Astrue*, No. 10-1840-SVH, 2011 WL 1770262 (D.S.C. May 9, 2011). The use of GAF scores has been discontinued in the DSM–V, in part because of a lack of conceptual clarity. *Clemins v. Astrue*, No. 13-0047, 2014 WL 4093424, at *26 (W.D. Va. Aug. 18, 2014) (citing American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders* 16 (5th ed. 2013)). In addition, as other courts have noted, "the Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' and has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" *Wind v. Barnhart*, 133 F. App'x 684, 692 (11th Cir. 2005) (quoting 65 Fed. Reg. 50746, 50764–65 (Aug. 21, 2000)); *see also Melgarejo v. Astrue*, No. JKS-08-3140, 2009 WL 5030706, at *2 (D. Md. Dec. 15, 2009). To the extent that they are considered, GAF scores range from 100 to 1, with lower scores indicating that the

31.)

The ALJ discussed Dr. Anderson's report and supplemental letter in her decision, but gave Dr. Anderson's opinion little weight. (Tr. 18.) The ALJ concluded that Dr. Anderson's opinion "is not consistent with the medical evidence of record and not supported by any treatment or clinical findings supporting such a restrictive RFC." (Tr. 18.) Unfortunately, the ALJ's discussion stops there. The ALJ does not specify the medical evidence of record that contradicts Dr. Anderson's opinion. This poses a problem for this Court in reviewing the ALJ's decision to determine whether it is supported by substantial evidence. It is not this Court's obligation (although it is often invited to do so by the Commissioner) to scour the record for the purportedly contradictory medical evidence alluded to by the ALJ. The only medical evidence cited by the ALJ that is potentially in contradiction to Dr. Anderson's opinion is evidence from April 2007, which is before the injuries that led to Mr. Kopp's alleged disability. (Tr. 18.) That Mr. Kopp exhibited "normal mental status" with a good prognosis in early 2007 is of little relevance to the issue of whether he was disabled at the time of the ALJ's decision in 2013.[3] Because it is not clear what evidence contradicts Dr. Anderson's opinion, the ALJ's decision is not supported by substantial evidence and the ALJ's decision on this point does not withstand scrutiny.

The same is true for the ALJ's partial rejection of the opinion of consultative mental health examiner Sara Phillips, Ph.D. (Tr. 17.) Dr. Phillips examined Mr. Kopp in December 2011 and assessed his GAF score as 50. (Tr. 351-55.) The ALJ assigned little weight to Dr. Phillips' opinion because of "internal inconsistencies in the GAF score and diagnosis which appear to be contrary to the claimant's functional abilities. . . ." (Tr. 17.) However, the functional abilities that the ALJ alluded to—lying in bed watching television all day, driving a car, caring for personal needs, shopping for groceries, doing laundry and household chores, cooking, visiting with family, getting along with other people, and having the ability to following instructions—are not facially inconsistent with the functional abilities expected with a GAF score of 50. The ALJ's explanation on this point is insufficient. The Court is unable to find that the ALJ's partial rejection of Dr. Phillips' opinion is supported by substantial evidence.

The ALJ's opinion does not adequately explain why the opinions of Mr. Kopp's

---

person is a danger to themselves or others, and higher scores indicating that the person has no symptoms to indicate problems in functioning:

> A GAF of 41 to 50 means that the patient has serious symptoms . . . OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).

*Haines v. Astrue*, No. SAG-10-0822, 2012 WL 94612, at *2 (D. Md. Jan. 10, 2012) (quoting *White v. Comm'r of Social Sec.,* 572 F.3d 272, 276 (6th Cir. 2009)).

[3] Notably, the ALJ also cites evidence from Mr. Kopp's treating physician in 2007, Dr. Elsa Correa. Dr. Correa assigned Mr. Kopp a GAF score of 50, which is consistent with Dr. Anderson's report. The Commissioner is correct that GAF scores are not determinative of disability, but they are an expression of a medical opinion. Here, the opinions of Dr. Anderson, Dr. Philips, and even Dr. Correa on Mr. Kopp's level of functioning, expressed through a GAF score, are consistent. It is not clear why the ALJ did not credit these opinions.

examining and treating physicians were partially rejected. By partially rejecting these opinions, the ALJ downplayed Mr. Kopp's significant mental functioning limitations in the RFC determination. For this reason, the Court is unable to find that the ALJ's RFC determination is supported by substantial evidence. This case must be remanded for further proceedings.[4]

For the reasons set forth herein, Mr. Kopp's Motion for Summary Judgment (ECF No. 19) and the Commissioner's Motion for Summary Judgment (ECF No. 22) will be DENIED. The ALJ's opinion will be VACATED and the case will be REMANDED for further proceedings. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

                                          Sincerely yours,

                                          /s/
                                        Timothy J. Sullivan
                                        United States Magistrate Judge

---

[4] At this time, it is unnecessary for the Court to address Mr. Kopp's second argument, but the Court notes that the Commissioner partially conceded error on the issue of jobs that the vocational expert testified that Mr. Kopp could perform. (ECF No. 22-1 at 15-17.)